**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KATHLEEN M. HOSEY | : | CIVIL ACTION NO: |
| 76 Woodland Drive | : | |
| White Haven, PA 18661 | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| WILKES-BARRE HOSPITAL | : | |
| COMPANY, LLC, d/b/a | : | |
| WILKES-BARRE GENERAL | : | |
| HOSPITAL | : | |
| 575 N. River St. | : | |
| Wilkes-Barre, PA  18764 | : | |
| | : | (Electronically Filed) |
| Defendant | : | |

## COMPLAINT

The Plaintiff, Kathleen M. Hosey (hereinafter "Hosey" or "Plaintiff"), by and through her counsel, Koff, Mangan, Vullo & Gartley, P.C., hereby complains of the Defendant, Wilkes-Barre Hospital Company, LLC, d/b/a Wilkes-Barre General Hospital (hereinafter the "Hospital" or "Defendant"), as follows:

## I.   Jurisdiction and Venue

1.   This action is authorized, founded upon, and arises under the provisions of federal law, particularly the Employee Retirement Income Security Act, 29 U.S.C. §1001 *et seq.* ("ERISA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA").

2.      The jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States and Plaintiff seeks redress for violations of civil rights, and pursuant to the provisions of 28 U.S.C. §1367 as to Plaintiff's state law claims under the PHRA, by means of supplemental jurisdiction.

3.      Venue is proper in this judicial district because all or a substantial part of the events and omissions giving rise to the claims occurred in this district and because Defendant conducts business in this judicial district.

## II.    Parties

4.      Plaintiff Hosey is a competent adult female currently residing at 76 Woodland Drive, White Haven, PA 18661, and is over the age of 40.

5.      At all relevant times, the Defendant Hospital has been and is a for-profit, acute care hospital facility, organized and existing under the laws of the State of Delaware, with a place of business located at 575 N. River St., Wilkes-Barre, PA 18764.

6.      At all relevant times, Defendant acted or failed to act through its agents, representatives and employees, each of whom acted or failed to act within the scope of their employment with Defendant.

7.      At all times material hereto, Defendant has been and is an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5)(A), the ADEA, 29 U.S.C. § 630(b), the FMLA, 29 U.S.C. §2611(4), and ERISA, 29 U.S.C. § 1002, as well as within the meaning of the PHRA, 43 P.S. § 954(b).   As such, Defendant is subject to the requirements of the ADA, ERISA, the FMLA, the ADEA and the PHRA.

2

8.      At all times material hereto, Plaintiff was employed by Defendant as its Blood Bank Department Supervisor.  Plaintiff worked at least 1,250 hours in the year preceding her discharge and was an eligible employee as defined by 29 U.S.C. §2611(2)(A).

## III.   Administrative Requirements

9.      Plaintiff has complied with all statutory prerequisites to the filing of this action by timely filing a charge with the Pennsylvania Human Relations Commission ("PHRC"), which charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), requesting and receiving from the EEOC a Notice of Right to Sue and timely filing this action within ninety (90) days of the receipt of said EEOC Notice.

## IV.   Statement of Claims

10.     Plaintiff incorporates herein by reference the averments of Paragraphs 1 through 9, inclusive, of this Complaint.

11.     Plaintiff is presently 62 years old and was born in 1954.

12.     In or about 1985, Plaintiff was hired by Defendant's predecessor, Nesbitt Memorial Hospital ("Nesbitt"), to work in its laboratory on a full-time basis.

13.     Nesbitt was merged into Wyoming Valley Health Care ("WVHC") in or around 1993, at which point Plaintiff became a full-time employee of WVHC.

14.     WVHC owned and operated Wilkes-Barre General Hospital ("WBGH"), with a place of business at 575 North River Street, Wilkes-Barre, PA 18764.

15.     Plaintiff had a break in service for several months in 2004 while she worked for the American Red Cross, after which she applied for and obtained the position of

3

Blood Bank Department Supervisor for WVHC, and worked on the premises of WBGH at 575 North River Street, Wilkes-Barre, PA 18764.

16.    WVHC (including WBGH) was purchased by Commonwealth Health Systems ("CHS") in or about 2008, at which point CHS formed an affiliated company, Wilkes-Barre Hospital Co., LLC, the Defendant herein.

17.    At all times relevant hereto, Defendant Wilkes-Barre Hospital Company, LLC has done business as WBGH.

18.    At all times relevant hereto, Plaintiff was a full-time employee of the Defendant at the WBGH location at 575 North River St., Wilkes-Barre, PA 18764.

19.    Plaintiff had a good work record for Defendant in that her level of performance was routinely rated as "meets standards" or better, as evidenced by Defendant's annual appraisals of her performance.

20.    On February 18, 2014, Plaintiff's husband suffered serious injuries in an accident. In particular, he sustained a right calcaneal avulsion fracture and torn Achilles tendon and thereafter had a bone infection and non-healing surgical wound, as a result of which he was and is an individual with a disability and a serious health condition.

21.    At this and all relevant times, Plaintiff's husband was covered by Plaintiff's health insurance with Independence Blue Cross, which coverage was provided through her employment with Defendant.

22.    Plaintiff's husband's injuries have required several surgeries since February of 2014 and extensive post-operative care, including the need for intravenous antibiotics while he was at home.

4

23.     Plaintiff is her husband's caregiver and holds his power of attorney, and the severity of his medical problems required her physical presence while he was hospitalized, attended medical appointments and received medical treatment at home.

24.     On February 19, 2014, in accordance with Defendant's policies and procedures, Plaintiff requested permission from her Supervisor, Gerry Clifford, who was/is Defendant's Administrative Laboratory Director, to utilize intermittent FMLA leave in order to assist with Plaintiff's husband's care.

25.     Defendant approved Plaintiff's request for intermittent leave.

26.     Through Plaintiff's request for FMLA leave, communications with Plaintiff and otherwise, Defendant's agents, employees and representatives had knowledge of Plaintiff's husband's disability.

27.     At or about the same time, Plaintiff learned from Mr. Clifford that a Blood Bank Department technician had also requested and been granted 12 weeks FMLA leave, which leave was also to commence in or about February, 2014.

28.     Plaintiff then expressed her concern over adequate staffing of the Blood Bank Department to Mr. Clifford, since her department would be reduced to only three (3) technicians and Plaintiff.

29.     Mr. Clifford told Plaintiff that she had to "work with what (she had)", and indicated that Plaintiff could not use overtime to make up the difference unless he approved it.

30.     In order to make her department function adequately and in accordance with staffing requirements, Plaintiff compensated for her reduced staff by using as little

intermittent leave as possible and by avoiding using it at times when it would have been appropriate to do so.

31.    Plaintiff's husband underwent his first post-accident surgery on February 26, 2014.

32.    In March 2014, Plaintiff was advised by Mr. Clifford that a second Blood Bank Department technician had requested and been granted three (3) weeks of FMLA leave, commencing in mid-April, 2014.  When she again expressed concern over the adequate staffing of her department, Mr. Clifford told Plaintiff that "we (were) all getting older, and that (she would) have people on FMLA, so (she) should deal with it."

33.    In order to cope with her serious staffing issues and Defendant's demands, Plaintiff was forced to fill in as much as possible for the two (2) technicians who were out on leave, which required her to work weekends, in between her intermittent FMLA time off, and which was extremely stressful and exhausting for Plaintiff.

34.    Plaintiff's husband underwent his second post-accident surgery on May 14, 2014.

35.    In or about May or June, 2014, Plaintiff was advised that an employee who reported to her, Mary Ellen Zaffuto, complained to Defendant's Human Resources Department that Plaintiff had refused to give another employee time off to attend a funeral.

36.    This accusation was not true, in that Plaintiff did approve the bereavement day as requested, despite her serious staffing issues.

37.    Defendant's Human Resources Director, Lisa Gobel, questioned Plaintiff concerning this incident, and despite Plaintiff's explanation that this allegation was untrue, she was unjustly written up for it and placed on one year probation.

38.    Mr. Clifford attended this "write up meeting", where Plaintiff was also advised by Ms. Gobel that Plaintiff's "staff" had been complaining about her and her staff scheduling (i.e., the bereavement day allegation).

39.    However, in that same meeting, Mr. Clifford admitted that NO Blood Bank staff member had ever complained to him about Plaintiff, and that Plaintiff should not be written up for the bereavement day issue.

40.    Mr. Clifford's opinion on Plaintiff's "write up" was disregarded by Ms. Gobel.

41.    In this "write up meeting", Ms. Gobel instructed Plaintiff to "leave the stress from (her) husband's accident at home."

42.    Immediately before this "write up meeting" with Ms. Gobel, Mr. Clifford suggested to the Plaintiff that she retire, in order to care for her husband.  Plaintiff responded that she could not do that, as her husband was disabled and that they both needed her employer-provided health insurance.

43.    In or about May, 2014, Respondent's Director of Compliance, Cherry Clavette, alerted Plaintiff to the fact that another employee had accessed (through Plaintiff's department) lab test results for several WBGH patients, and had been discussing those results with Plaintiff's staff, in violation of HIPAA.

7

44.    This employee was neither discharged nor disciplined for these violations, although Ms. Gobel admitted to Plaintiff that she had a "book of infractions" concerning that employee.

45.    Prior to this incident, this employee had frequently engaged in inappropriate, unprofessional, hostile and harassing behavior and repeatedly violated work policies and procedures, of which Defendant's management was made aware. As just one example, this employee openly and unnecessarily "wore" a box cutter blade on her person while at work, which made both Plaintiff and other staff fearful for their safety.

46.    Despite her unprofessional behavior, her numerous violations of Defendant's policies and procedures, and her 2014 violation of HIPAA, this employee nevertheless continued to work for the Defendant.

47.    Plaintiff's husband was hospitalized at the Defendant Hospital for several days in early December 2014 related to his disability and serious health condition.

48.    On January 6, 2015, Plaintiff's husband underwent a third post-accident surgery.

49.    On January 22, 2015, Plaintiff was called into a meeting with Ms. Gobel and Ms. Clavette and was accused of violating Respondent's HIPAA policy by looking up her husband's lab work in Defendant's computer network system.

50.    Plaintiff advised Ms. Gobel and Ms. Clavette that she did not access her husband's lab records, but, instead, had just looked him up in Defendant's patient portal (where authorized persons, family members, etc. can review a patient's test results), for

which Plaintiff had permission, to check to see if his blood sample had been transported to the lab.

51.   Defendant knew at the time of this incident that Plaintiff did not violate its HIPAA policy and that Plaintiff was actually attempting to assist her disabled husband in tracking necessary blood testing.

52.   In fact, Plaintiff had responded to an official inquiry from a pharmacist regarding an individual's lab test status, which was a standard occurrence in a hospital laboratory environment.   As the department supervisor, Plaintiff was authorized to respond to such official inquiries and was actually required to confirm whether an individual was registered as a patient in WBGH, to establish whether an order for laboratory testing could even exist in the first place.

53.   Plaintiff followed this procedure and determined that the individual in question, her husband, was not registered as a patient, and gave this information to the pharmacist.   Regardless, Plaintiff had her husband's power of attorney and a signed HIPAA-compliant authorization, which allows Plaintiff access to any and all information related to his February 2014 injury and resultant disability.

54.   Defendant terminated Plaintiff's employment on January 26, 2015, while she was still utilizing FMLA leave, purportedly for the aforesaid alleged HIPAA violation, specifically averring that Plaintiff had "accessed (her) spouse's patient record without a business reason," which was not true. Defendant also alleged that Plaintiff had been suspended on June 2, 2014, which was also untrue, and that this second violation within twelve (12) months of that alleged suspension date was also cause for her termination.

55.    Plaintiff believes, and therefore avers, that Defendant replaced her with a substantially younger woman.

56.    During 2014 and until her termination on January 26, 2015, Plaintiff utilized intermittent FMLA leave related to her husband's serious health condition at the time of her husband's surgeries, for post-operative care, for medical appointments and for needed at-home care.

57.    At meetings with Ms. Gobel, Ms. Gobel asked Plaintiff questions about her husband's health status, including questions about how many surgeries he required and whether he could return to work.

58.    As a result of Defendant's actions as aforesaid, Plaintiff has sustained injury and incurred damages in the form of lost wages, loss of employment opportunities, lost benefits, costs associated with health care, physical illness, damage to reputation, humiliation, embarrassment, inconvenience and serious emotional pain, distress, and anguish.

59.    As a result of Defendant's actions as aforesaid, Plaintiff has also incurred attorneys' fees and costs.

## COUNT I
## AMERICANS WITH DISABILITY ACT (ADA)

60.    Plaintiff incorporates herein by reference and makes a part hereof Paragraph 1 through 59 inclusive of this Complaint.

61.    At all times material hereto, Plaintiff's husband had a disability and a record of a disability within the meaning of the ADA.

10

62. At all times material hereto, Defendant was aware of Plaintiff's husband's medical disability that required Plaintiff to take time off from work intermittently to care for him.

63. At all times material hereto, Plaintiff was qualified to perform her position as Defendant's Blood Bank Department Supervisor.

64. Defendant knew that Plaintiff's husband was covered by Plaintiff's health insurance that she had through her employment with the Defendant, and further knew that Plaintiff's husband required and had had multiple surgeries that were being paid for through that health insurance, thereby increasing health care costs for Defendant.

65. Although Plaintiff was performing her job, Defendant believed that Plaintiff was being distracted from performing her job by her husband's disability and that Plaintiff would continue to require time off to care for him.

66. Defendant treated Plaintiff less favorably than it did other employees who did not have a relative with a disability, and terminated Plaintiff's employment on January 26, 2015, all because of her association with her husband, a disabled individual under the ADA.

67. Defendant's proffered excuses for its actions against Plaintiff were a pretext for discrimination based on her association with a disabled individual.

68. The disability of Plaintiff's husband was a determining factor in Defendant's decisions to falsely accuse Plaintiff of violating HIPAA, to take performance actions against Plaintiff and to terminate Plaintiff's employment on January 26, 2015.

69. Defendant engaged in said unlawful acts with intentional, knowing and/or reckless disregard of the requirements of the ADA.

70. As a direct and proximate result of the foregoing conduct, Plaintiff suffered damages as set forth herein.

WHEREFORE, Plaintiff, Kathleen M. Hosey, respectfully requests that this Court enter judgment in her favor and against the Defendant Hospital and enter an Order providing that:

(a) Defendant institute and carry out policies, practices and programs which prohibit discrimination in employment based on employee disability and/or employee association with a disabled individual;

(b) Defendant pay Plaintiff damages representing past and future lost wages and benefits, together with pre-judgment interest, as applicable, on said amounts from the date of Plaintiff's termination;

(c) Defendant compensate Plaintiff for other pecuniary losses, including, but not limited to, costs incurred for health insurance premiums and damages associated with loss of medical insurance

(d) Defendant pay Plaintiff compensatory damages;

(e) Defendant pay Plaintiff punitive damages;

(f) Defendant pay Plaintiff's reasonable attorneys' fees and costs of litigation; and

(g) Plaintiff be granted such further relief as the Court deems necessary and proper.

## COUNT II
## EMPLOYEE RETIREMENT INCOME SECURITY ACT

71.    Plaintiff incorporates herein by reference and makes a part hereof Paragraph 1 through 70 inclusive of this Complaint.

72.    Section 510 of ERISA, 29 U.S.C. §1140, prohibits an employer from disciplining, discharging, or discriminating against a participant for exercising any right to which she is entitled under the provisions of an employee benefit plan.

73.    Section 510 of ERISA, 29 U.S.C. §1140, also prohibits an employer from interfering with the attainment of a right to which an employee may be entitled under an employee benefit plan.

74.    At all times material hereto, Plaintiff and her husband were covered by the Defendant's health care plan, which constituted an employee benefit plan under 29 U.S.C. §1140.

75.    At the time of Plaintiff's discharge, Plaintiff had a right to continued health insurance benefits under Defendant's health insurance plan, including coverage for her husband, and expected to be able to utilize those benefits in the future for her husband's health care.

76.    By its conduct in discharging Plaintiff, Defendant intended to interfere with Plaintiff's attainment of health insurance benefits in the future.

77.    Defendant discharged Plaintiff for exercising her right to health benefits in the past and for needing to use health insurance benefits in the future, in violation of Section 510 of ERISA.

13

78.     As a result of Defendant's unlawful conduct, Plaintiff has suffered the damages set forth herein.

79.     Plaintiff seeks to have Defendant enjoined from violating Section 510 of ERISA and seeks such other equitable relief as the Court deems appropriate.

**WHEREFORE**, Plaintiff, Kathleen M. Hosey, respectfully requests that this Court enter judgment in her favor and against the Defendant, and enter an Order providing that:

(a)     Defendant pay Plaintiff damages representing past and future lost wages and benefits, together with pre-judgment interest, as applicable, in an amount to be proved at trial, and provide her with other affirmative relief necessary to eradicate the effect of Defendant's unlawful practices;

(b)     Defendant compensate Plaintiff for other pecuniary losses, including, but not limited to, costs incurred for health insurance premiums and damages associated with loss of medical insurance;

(c)     Defendant pay Plaintiff's attorneys' fees and costs incurred in this action;

(d)     Defendant be permanently enjoined from engaging in violations of ERISA; and

(e)     Plaintiff be granted such additional relief as the Court deems necessary and proper.

## COUNT III
## FAMILY AND MEDICAL LEAVE ACT (Interference)

80. Plaintiff incorporates herein by reference and makes a part hereof Paragraphs 1 through 79 inclusive of this Complaint.

81. Under 29 U.S.C. §2615(a)(1), it is unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA.

82. At the time of her discharge, Plaintiff had a need for additional FMLA qualifying leave.

83. Defendant interfered with, restrained and denied Plaintiff's exercise of her rights to FMLA leave by discouraging her from taking FMLA qualifying leave, using her absences from work for FMLA qualifying leave as a negative factor in its employment actions against her and terminating her on January 26, 2015 because of her past use and anticipated future use of FMLA protected absences.

84. As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered and continues to suffer damages as set forth above.

WHEREFORE, Plaintiff, Kathleen M. Hosey, respectfully requests that this Court enter judgment in her favor and against the Defendant Hospital and enter an Order providing that:

(a) Defendant pay Plaintiff damages representing past and future lost wages and benefits, together with pre-judgment interest, as applicable, in an amount to be proved at trial, and provide her with other affirmative relief necessary to eradicate the effect of its unlawful practices;

(b)    Defendant compensate Plaintiff for other pecuniary losses, including, but not limited to, costs incurred for health insurance premiums and damages associated with loss of medical insurance;

(c)    Defendant pay Plaintiff's attorneys' fees and costs incurred in this action;

(d)    Defendant pay Plaintiff liquidated damages;

(e)    Defendant be permanently enjoined from engaging in violations of the FMLA; and

(f)    Plaintiff be granted such further relief as the Court deems necessary and proper.

## COUNT IV
## FAMILY AND MEDICAL LEAVE ACT (Retaliation)

85.    Plaintiff incorporates herein by reference and makes a part hereof Paragraphs 1 through 84 inclusive of this Complaint.

86.    Under 29 U.S.C. §2615(a)(2), it is unlawful for an employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by the FMLA.

87.    Defendant discriminated against Plaintiff and discharged Plaintiff because she took and was taking FMLA qualifying leave and/or leave protected by the FMLA, in violation of the FMLA.

88.    Plaintiff's use of FMLA leave was a determinative factor in Defendant's decision to discharge Plaintiff.

89.    As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered and continues to suffer damages as set forth above.

16

WHEREFORE, Plaintiff, Kathleen M. Hosey, respectfully requests that this Court enter judgment in her favor and against the Defendant Hospital and enter an Order providing that:

(a)    Defendant pay Plaintiff damages representing past and future lost wages and benefits, together with pre-judgment interest, as applicable, in an amount to be proved at trial, and provide her with other affirmative relief necessary to eradicate the effect of its unlawful practices;

(b)    Defendant compensate Plaintiff for other pecuniary losses, including, but not limited to, costs incurred for health insurance premiums and damages associated with loss of medical insurance;

(c)    Defendant pay Plaintiff's attorneys' fees and costs incurred in this action;

(d)    Defendant pay Plaintiff liquidated damages;

(e)    Defendant be permanently enjoined from engaging in violations of the FMLA; and

(f)    Plaintiff be granted such further relief as the Court deems necessary and proper.

## COUNT V
## AGE DISCRIMINATION IN EMPLOYMENT ACT

90.    Plaintiff incorporates herein by reference and makes a part hereof Paragraphs 1 through 89 inclusive of this Complaint.

91.    Plaintiff is over the age of 40 and therefore, within the class of persons protected by the ADEA.

92.    Defendant engaged in unlawful discrimination based on age in violation of §623(a)(1) of the ADEA.  These practices and conduct included, but were not limited to, falsely accusing Plaintiff of violating Defendant's HIPAA policy and treating her far less favorably than Defendant's substantially younger employee(s) who had actually violated HIPAA; misrepresenting the events that occurred in Plaintiff's department and failing to follow Defendant's own policies and procedures; and subjecting Plaintiff to unwarranted write-ups and placement on probation, culminating in the termination of  Plaintiff's employment as of January 26, 2015, all based on Plaintiff's age.

93.    The effect of the practices and conduct complained of has been to deprive Plaintiff of equal employment opportunities, and has otherwise adversely affected her status as an employee because of her age.

94.    Defendant used the false and unsubstantiated allegations of unsatisfactory performance and violation of Defendant's HIPAA policy as pretexts for unlawful discrimination on the basis of age in discharging Plaintiff on January 26, 2015.

95.    Defendant engaged in said unlawful acts and terminated Plaintiff's employment in violation of and with intentional, knowing, and/or reckless disregard of the requirements of the ADEA.

96.    Defendant's violations were willful within the meaning of the ADEA, thereby entitling Plaintiff to liquidated damages as provided within said Act.

97.    As a direct and proximate result of the foregoing conduct, Plaintiff suffered the damages set forth herein.

WHEREFORE, the Plaintiff, Kathleen M. Hosey, respectfully requests that this Court enter judgment in her favor and against the Defendant, and enter an Order providing that:

(a) Defendant institute and carry out policies, practices and programs which prohibit discrimination in employment based on age;

(b) Defendant pay Plaintiff damages representing past and future lost wages and benefits, together with pre-judgment interest, as applicable, on said amounts from the date of Plaintiff's termination;

(c) Defendant compensate Plaintiff for other pecuniary losses, including, but not limited to, costs incurred for health insurance premiums and damages associated with loss of medical insurance;

(d) Defendant pay Plaintiff's reasonable attorneys' fees and costs incurred in this action;

(e) Defendant pay Plaintiff liquidated damages as provided for in the ADEA; and

(f) Plaintiff be granted such further relief as the Court deems necessary and proper.

## COUNT VI
## PENNSYLVANIA HUMAN RELATIONS ACT

98. Plaintiff incorporates herein by reference and makes a part hereof Paragraphs 1 through 97, inclusive, of this Complaint.

99. Defendant's discriminatory conduct in terminating Plaintiff's employment as of January 26, 2015 based on Plaintiff's age, violated the PHRA, 43 P.S. §955(a).

19

100.    Defendant's discriminatory conduct based on Plaintiff's association with a disabled individual, her husband, which culminated in the termination of Plaintiff's employment as of January 26, 2015, also violated the PHRA, 43 P.S. §955(a).

101.    As a direct and proximate result of the foregoing conduct, Plaintiff suffered the damages set forth herein.

WHEREFORE, the Plaintiff, Kathleen M. Hosey, respectfully requests that this Court enter judgment in her favor and against the Defendant Hospital, and enter an Order providing that:

(a)    Defendant institute and carry out policies, practices and programs which prohibit unlawful discrimination;

(b)    Defendant pay Plaintiff damages representing past and future lost wages and benefits, together with pre-judgment interest on said amounts from the date of Plaintiff's termination;

(c)    Defendant compensate Plaintiff for other pecuniary losses, including, but not limited to, costs incurred for health insurance premiums and damages associated with loss of medical insurance;

(d)    Defendant pay Plaintiff compensatory damages;

(e)    Defendant pay Plaintiff's reasonable attorneys' fees and costs of litigation; and

(f)    Plaintiff be granted such further relief as the Court deems necessary and proper.

**Jury Trial Demanded**

Plaintiff, Kathleen M. Hosey, requests a trial by jury of each issue triable of right by a jury.

Respectfully submitted,

KOFF, MANGAN, VULLO, & GARTLEY P.C.

/s/___ Cynthia R. Vullo_____
       Cynthia R. Vullo, Esquire
       Atty. I.D. No. 45720
       cvullo@kmvglaw.com
       179 South Wyoming Ave.
       Kingston, PA 18704
       (570) 718-1700
       (570) 718-1701 (fax)
       Attorneys for Plaintiff, Kathleen M. Hosey

W:\Cindy\Hosey\Federal Pleadings\Complaint.Docx